**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TAMMIE WILSON,

      Plaintiff,

vs.                                                    CASE NO. 3:11-cv-153-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

    This case is before the Court on Plaintiff's complaint (Doc. #1).   Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claim for disability insurance benefits (DIB).  *Id.*  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

    Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #11, Plaintiff's Brief).   Defendant filed his brief in support of the decision to deny disability benefits (Doc. #14, Defendant's Brief).  The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated May 3, 2011 (Doc. #9).

    Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the

reasons set out herein, the decision is **REVERSED** and the case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB with the Social Security Administration on January 7, 2009 (Tr. 135-38).  Plaintiff alleged a disability onset date of April 29, 2008 (Tr. 135).  In an undated Disability Report-Adult, Plaintiff alleged she was unable to work due to transient ischemic attacks, facial numbness, high blood pressure, anxiety and depression (Tr. 152-60).

The DIB application was denied initially and upon reconsideration.  An administrative hearing was held on August 31, 2010 in Jacksonville, Florida before Administrative Law Judge (ALJ) Teresa J. Davenport (Tr. 28-68).  Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Mark Capps (Tr. 30, 61-66).  Plaintiff was represented at the administrative hearing by attorney Lori Gaglione (Tr. 30, 80-81).

ALJ Davenport issued the decision denying Plaintiff's claim on October 18, 2010 (Tr. 15-23).  Plaintiff requested review of the hearing decision by the Appeals Council, but the request was denied (Tr. 1-5).  Thus, the ALJ's decision became the final decision of the Commissioner.  Thereafter, Plaintiff's current counsel of record, Erik Berger, Esq., filed the instant complaint in federal court on February 16, 2011 (Doc. #1 at 1).

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND THE STANDARD OF REVIEW

A plaintiff is entitled to disability benefits under the Social Security Act only when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death

2

or last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505.[1]  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through step four, while at step five the burden temporarily shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 29, 2008 (Tr. 17).  ALJ Davenport found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012 (Tr. 17).  At step two, the ALJ found Plaintiff had the severe impairments of major depressive disorder and anxiety (Tr. 17).  At step three, the ALJ found Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).

The ALJ next determined that Plaintiff had the residual functional capacity (RFC) to "perform the full range of medium work. . . [but would be] limited to work with occasional contact with people, coworkers, or supervisors. . . [and she] should work with things instead of people" (Tr. 19).  At step four, the ALJ determined Plaintiff could not perform any of her past relevant work (Tr. 21).  However, relying in part on vocational expert testimony, the ALJ determined at step five that there were other jobs with sufficient available positions that Plaintiff could perform, such as an assembler, mail sorter or warehouse checker (Tr. 22).  Thus, the ALJ determined Plaintiff was not disabled within the meaning of the Social

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition.

Security Act from Plaintiff's alleged onset date through the date of the decision (Tr. 15).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv's.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the

4

evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, Tammie Wilson, was born on May 30, 1968 (Tr. 135).  Therefore, she was forty-two (42) years old on the date of the ALJ's decision.  Plaintiff completed high school and one year of college (Tr. 159).  Plaintiff had past relevant work with Bank of America and BellSouth as a customer service representative and with various temporary employment agencies performing clerical work (Tr. 38, 49-50, 163).

Plaintiff raises two issues on appeal (Doc. #11 at 1).  First, Plaintiff argues the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence or pace in the hypothetical question posed to the vocational expert and in the residual functional capacity determination of Plaintiff's ability to perform work related tasks despite her impairments (Doc. #11 at 1, 9-13).  Second, Plaintiff argues the ALJ's decision to accord

the opinion evidence of Janet Sievers, Licensed Clinical Social Worker, "little weight" was not supported by substantial evidence. *Id.* at 1, 13-19.  In this regard, Plaintiff submits the ALJ "failed to properly assess the opinions of Ms. Sievers" and the "reason for providing little weight was legally deficient." *Id.* at 14 (internal quotation marks omitted).

The Court has reviewed the record in its entirety, including the arguments of the parties in their briefs and the underlying administrative record containing the evidence before the ALJ.  The Court finds has identified a reversible error in Plaintiff's first stated issue.  It is unclear whether the ALJ adequately accounted for Wilson's severe mental impairments in the assessed RFC and in the hypothetical question posed to the vocational expert.  As the ALJ relied on the VE's testimony to find Plaintiff could perform other work in the economy, the Court does not find substantial evidence supports the ALJ's decision to deny Plaintiff's disability application on that basis.

A discussion of both issues raised by Plaintiff follows.

*Evaluation of Opinion Evidence from Licensed Clinical Social Worker (LCSW)*

Plaintiff presents Ms. Janet Sievers, LCSW, as her primary treating source for her mental impairments.  Plaintiff's Brief at 14 ("The only treatment she received for these mental impairments was psychotherapy sessions provided by Jane Sievers, a Licensed Clinical Social Worker (LCSW).").  Plaintiff initially saw Ms. Sievers in 2001 for symptoms remarkably similar to those for which she sought Ms. Sievers' counsel in 2008 through 2010.  Plaintiff went to Sievers in 2001 for depression and anxiety, along with a stated difficulty of getting out of bed due to her mental issues (Tr. 442-69).  Plaintiff returned to Ms. Sievers on October 7, 2008 (Tr. 439-41).  Plaintiff saw Ms. Sievers approximately thirty-one times from October 2008 through August 2, 2010 (Tr. 404-41).  When Plaintiff

returned in 2008, she reported the numbness in her face, that her nerves were shot, and her biggest struggle was getting out of bed in the mornings (Tr. 439-41).  Sievers noted Plaintiff was employed by Bank of America, but had been on leave since April 29, 2008. *Id.* Plaintiff told Ms. Sievers that she left work because her blood pressure went up to 177/110 and she was put in the hospital for tests due to the numbness in her face (Tr. 440; *see also* Tr. 37).  Sievers also noted that the disability doctors had advised Plaintiff could perform her job (Tr. 439).  Throughout 2008, Ms. Sievers noted that Plaintiff was anxious about her job and her medical conditions, but that Plaintiff was still trying to get out and socialize (Tr. 435-38).  On October 23, 2008, Ms. Sievers wrote to Dr. Georgia Doyle, M.D., Plaintiff's primary care physician,  recommending a prescription for Xanax in addition to the Prozac (Tr. 534).  Just a few days thereafter, Dr. Doyle released Plaintiff return to work on December 1, 2008 (Tr. 530-33, 535).

In 2009, Plaintiff began reporting difficulty with her insurance and finances, which according to Ms. Sievers resulted in an increase in anxiety (Tr. 434; *see also* Tr. 421-33). Plaintiff reported she was irritable and frequently snapped at her children, who "constantly" told her to "chill." *Id.*  On January 13, 2009, Sievers noted Plaintiff's short term disability had been approved (Tr. 434).  Plaintiff's symptoms waxed and waned throughout 2009 (Tr. 415-34).  At times she reported having days in which she had plenty of energy to get things done (Tr. 415); she also reported some good days and some bad days (Tr. 417, 419, 420). Frequently, Plaintiff discussed problems with her relationships with her children and other family members (*see, e.g.*, Tr. 423, 425-28).  Plaintiff often reported memory issues and exhaustion or sleeping issues (*see, e.g.*, Tr. 428-31).  On December 8, 2009, Ms. Sievers noted Plaintiff seemed to be improving; Plaintiff stated she didn't want any responsibilities,

but wanted to have a life and to have fun (Tr. 415).

In 2010, Ms. Sievers noted Plaintiff's physical, monetary and family problems continued, along with her anxiety and depression (Tr. 404-14).  There was no change or suggested change in medication during this time.  *Id.*

Defendant correctly notes Ms. Sievers extensively documented Plaintiff subjective complaints of symptoms, but never administered any objective testing or objectively observed functional limitations that would preclude work related activity (*see* Tr. 404-41). Defendant's Brief at 8. In fact, in completing a Psychiatric Medical Request form for Plaintiff's long term disability insurance provider on March 7, 2009, Ms. Sievers noted she had not performed any mental status exams or observations of Plaintiff (Tr. 316).

In completing the Psychiatric Medical Request form for Metropolitan Life Insurance Company for the continuation of Plaintiff's long term disability claim, Ms. Sievers stated Plaintiff struggled cognitively, including her concentration, memory, and judgment especially in handling her fourteen year old daughter (Tr. 316-17).  Ms. Sievers noted Plaintiff's account that Plaintiff forgot to pick up her daughter from school, and reported she had forgotten where the school was located.[2]  *Id.*  Ms. Sievers stated that in her opinion, Plaintiff was unable to work and would continue to be unable to work until Plaintiff "is diagnosed with a medical condition and a course of treatment is started" (Tr. 317).

On January 9, 2010, Ms. Sievers completed a Mental Residual Function Capacity Assessment on which she checked that she found Plaintiff markedly limited in the majority of the areas of mental functioning (Tr. 388-89).  On that same date, Ms. Sievers completed

---

[2]It is not clear to the undersigned if Plaintiff forgot to pick one of her daughters up at school on one or two occasions, or if she frequently forgot to pick up the daughter.

8

a Psychiatric Review Technique form on which she reported Plaintiff had the affective disorder of depressive syndrome and an anxiety disorder not otherwise specified (Tr. 388-89).  Although she noted Plaintiff had between marked and extreme limitations in each of the areas of activities of daily living, social functioning, and maintaining concentration persistence or pace, she found either mild limitation or no episodes of decompensation of extended duration (Tr. 400).

ALJ Davenport gave little weight to Ms. Sievers' opinion (Tr. 21).  The ALJ found Ms. Sievers' opinion was inconsistent with the course of treatment one would expect if Plaintiff were truly disabled, because Plaintiff's medication was not increased and because Plaintiff had not been referred to family therapy or a licensed professional.  *Id.*  Plaintiff argues the ALJ's analysis of Ms. Sievers' opinions was legally deficient and not supported by substantial evidence.  *See* Plaintiff's Brief at 19.  Although Plaintiff presents a well written argument, ultimately it fails to present reversible error.

In the decision on review before this Court, the ALJ wrote four lengthy paragraphs discussing the evidence from Ms. Sievers' office (Tr. 17-18, 20-21).  *See Carter-Kuehner v. Astrue,* No. 1:08-CV-291-TS, 2009 WL 5031338, *2 (N.D. Ind. Dec. 15, 2009) (finding the ALJ's two paragraph discussion of the opinions of the plaintiff's treating therapist and plaintiff's treating psychiatrist fulfilled the ALJ's legal requirements in evaluating those opinions).[3]  ALJ Davenport correctly noted that the majority of evidence presented in this case focuses on Plaintiff's family issues, including frequent squabbles with her children (Tr. 20).  This evidence can be found among the psychotherapy session notes recorded by Ms.

_____

[3]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Sievers (*see* Tr. 404-41).  Among those session notes, Plaintiff was advised by Ms. Sievers in April 2009 that she could control her mood if she chose to do so (Tr. 423).  The notes also reflect Plaintiff's medication for her depression and anxiety remained essentially constant throughout her treatment period with Ms. Sievers (*see* Tr. 448 (noting Prozac at 20mg on August 22, 2001), Tr. 404-39 (noting Prozac at 20mg October 7, 2008 through August 2, 2010); *also see, e.g.*, Tr. 472, 511 (Dr. Doyle's notations of Prozac prescription at 20mg)).

Plaintiff treated with primary care physician Dr. Georgia Doyle, M.D., from at least January 2007 through August 2009 (Tr. 279-93, 471-80).  The record indicates Dr. Doyle determined Plaintiff should be excused from work from July 14, 2008 until December 1, 2008 (Tr. 504, 505, 510, 535).  Dr. Doyle was in receipt of Ms. Sievers' opinion from March 2009, yet there is no indication in the record Dr. Doyle found Plaintiff should be limited from work after December 1, 2008 (*see* Tr. 311-17).  Moreover, Dr. Doyle was aware of Plaintiff's symptoms of anxiety and depression, and her complaints of forgetfulness, and prescribed the conservative medications Plaintiff took for these conditions (*see, e.g.*, Tr. 283, 290, 293, 472, 511).

Plaintiff was admitted to the Baptist Medical Center from April 29, 2008- May 1, 2008 for a cardiovascular stress test (Tr. 239-66).  The patient notes reflect Plaintiff's mental status was normal; specifically, she was alert and oriented to person, place and time, was able to follow multi-step commands, and had good attention, concentration and memory (Tr. 246).

Dr. James Nealis, M.D., of Nealis Neurology, saw Plaintiff three times from June 11, 2008 through July 9, 2008 (268-73).  He diagnosed Plaintiff with anxiety and noted she had

a lot of stress in her life due to her job at Bank of America and her son's legal problems (Tr. 268). There was no mention of concentration deficits or memory problems throughout his notes (Tr. 268-73).

Dr. Carlos Gama, M.D., of Neurological Care Center, LLC,  saw Plaintiff on two occasions in late 2008 (Tr. 296-309). Plaintiff complained of forgetfulness during the initial visit (Tr. 300-01). Dr. Gama noted the neurological exam was negative for memory loss, confusion, depression, and concentration difficulties, but positive for depression and anxiety (Tr. 297).

Dr. Kevin Hays, D.O., or his partners at First Coast Cardiovascular Institute, saw Plaintiff nine times between August 11, 2008 and April 29, 2009 for various tests and procedures, including a cardiovascular stress test and sleep study (Tr. 345-68).  It is repeatedly noted that Plaintiff was alert and oriented times three, and was "healthy appearing" in no apparent distress with a normal mood (Tr. 345-47, 351-53, 358-60).  On initial examination, Dr. Vagar Ali, M.D., reported Plaintiff "[g]enerally feels well" (Tr. 366-68).

A number of professionals were requested by the Social Security Administration to review Plaintiff's records.  On March 9, 2009, Steven Wise, Psy.D., reviewed the records and agreed with Plaintiff's prior diagnoses of an affective disorder and anxiety, but found the impairments were not severe (Tr. 318).  On June 29, 2009, Eric Puestow, M.D., reviewed Wilson's records and found no severe impairment regarding the ability to work, noting that all exams were normal and the diagnosis of a "TIA" (transient ischemic attack) was questionable (Tr. 369).  On July 20, 2009, Leif Davis, Psy.D., also reviewed Plaintiff's records (Tr. 370-87).  He too agreed with Plaintiff's diagnoses of an affective disorder in the form of depression and of an anxiety disorder (Tr. 370-82).  He marked that a residual

11

functional capacity assessment was necessary because Plaintiff's mental impairments coexisted with non-mental impairments that required referral to another medical specialty (Tr. 370).   Thus, Dr. Davis did not determine whether Plaintiff's mental impairments were severe or were not severe.  *Id.*

Plaintiff is correct that the ALJ must consider all of the available evidence in determining whether a claimant is disabled under the Social Security Act.   20 C.F.R. § 1520(a)(3).   Here it is clear the ALJ specifically considered the evidence over which Plaintiff raises an issue.   The ALJ's decision reflects thorough consideration of the records from Ms. Sievers, including Plaintiff's psychotherapy session notes and Ms. Sievers' stated opinions (*see* Tr. 17-18, 19-21).   Ms. Sievers' opinions, however, are not medical opinions under the Regulations and are significant only to the extent the opinions reflect Ms. Sievers' "insight into the severity" of Plaintiff's impairments.   *See* SSR 06-03p, 2006 WL 2329939, *2 (S.S.A. Aug. 9, 2006).   "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case."   *Id.*   Only acceptable medical sources can be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.*

While the Regulations direct the factors in 20 C.F.R. § 404.1527(d) shall apply to the evaluation of medical opinions from acceptable medical sources, the Social Security Administration has noted those same factors "can" be applied to opinion evidence from other sources.   SSR 06-03p, 2006 WL 2329939 at *4-5. The Court's independent review of the record reveals: (1) Ms. Sievers' is a professional social worker/counselor who has the longest treating relationship with Plaintiff for Plaintiff's claimed mental impairments; Dr. Doyle, however, also treated Plaintiff over a long term, approximately thirty-two months,

during which she saw Plaintiff on eighteen occasions, yet did not remark on Plaintiff's claimed mental impairments despite prescribing anti-depressive and anti-anxiety medication; (2) Ms. Sievers' opinions on Plaintiff's mental limitations to work are not corroborated by the other evidence of record; Plaintiff's treating doctors did not comment on the severity of Plaintiff's claimed mental limitations; Plaintiff was referred to as a pleasant woman repeatedly; the non-examining consultants who reviewed the record did not find Plaintiff's symptoms represented significant functional limitations from work; (3) Ms. Sievers does not present other relevant evidence to support her opinion on Plaintiff's ability to work; there were no diagnostic tests in the record and the psychotherapy session notes report Plaintiff's subjective complaints but do not address work related tasks; (4) Ms. Sievers explains her opinion of Plaintiff's mental status through her session notes, which reflect Plaintiff's subjective complaints; (5) Ms. Sievers appears qualified to provide counseling therapy for Plaintiff's complaints of mental issues, but does not appear to have any particular level of expertise related to a person's ability to perform in the workplace; and (6) the reviewing consultants' reports, the other medical evidence, the ALJ's consideration of the record evidence and Plaintiff's testimony tend to refute Ms. Sievers' opinion evidence.

The question is not whether the ALJ had good cause to give little weight to Ms. Sievers' opinion, thereby discounting the opinion evidence. Whether an ALJ has good cause to discount the weight afforded to medical opinion evidence is reserved to "medical opinions" from treating sources, which by definition of the Social Security Administration are statements from acceptable medical sources "that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis,

13

and what the individual can do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939 at *2; *see also* 20 C.F.R. § 404.1527; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The question is limited to whether substantial evidence supports the ALJ's finding Dr. Sievers' opinion should be given little weight. *Cf. McDonald v. Barnhart*, 358 F.Supp.2d 1034, 1039-40 (D. Kan. 2005) (finding failure to take into account the opinion of the plaintiff's mental health counselor was not reversible error); *Sorg v. Astrue*, No. C09-5063KLS, 2009 WL 4885184, *16 (W.D. Wash. Dec. 16, 2009) (noting in dicta that the opinions of mental health therapists may be given less weight than opinions from acceptable medical sources, but finding the ALJ may not rely solely on the "other sources" status to determine those opinions are not entitled to great weight). In this case, substantial evidence, as discussed above, supports the ALJ's finding on this issue.

*Plaintiff's Moderate Limitations in Concentration, Persistence or Pace*

Plaintiff argues the ALJ's additional restrictions on her ability to perform medium work are insufficient to account for the moderate limitation assessed in the functional area of concentration, persistence or pace. Plaintiff's Brief at 12. More specifically, Plaintiff asserts that limiting her work to that which requires only occasional contact with people, coworkers and supervisors, in conjunction with the restriction Plaintiff should work with things instead of people, "fails to account for the ALJ's own finding that [she] experiences moderate limitations in her ability to 'sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'" *Id.* (internal citation omitted). In this regard, Plaintiff contends the ALJ erred in not including a recognized moderate limitation in concentration, persistence, or pace in the

14

RFC or the hypothetical question posed to the VE.  *Id.* at 9-13.

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error within this issue.  It does not appear the ALJ adequately accounted for Wilson's severe mental impairments in the assessed RFC and in the hypothetical questions posed to the vocational expert.

As noted earlier, the ALJ in this case found Plaintiff's major depressive disorder and anxiety were severe impairments.  By definition, a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Thus, the ALJ found Plaintiff had severe mental impairments that affect her ability to work.

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 405.1520a.  Section 404.1520a(b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section.  Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and  the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more."  Section 404.1520a(e)(4) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The effects of an impairment are measured by the limitations on the ability to work. The ALJ must consider a claimant's limitations on the ability to work when assessing the severity of an impairment.  *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe).  In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff Wilson's depression and anxiety caused moderate restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation that had been of extended duration (Tr. 19).  Thus, Wilson's mental impairments were determined to cause moderate difficulties in two of the four broad areas of functioning.

If the ALJ finds a claimant's impairment or combination of impairments to be severe, then the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  In this case, the ALJ found Wilson's mental impairments did not satisfy "paragraph B" criteria or "paragraph C criteria" of the "adult mental disorders listings in 12.00 of the Listing of Impairments" (Tr. 19).

The four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe, and then determine the mental functional limitations on the claimant's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific

16

determination.  *Id.*  Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting.   20 C.F.R. § 404.1521(b). The category of concentration, persistence or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.  While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time limits. *Id.*

In this case, there was no psychological testing submitted with Plaintiff's evidence. Plaintiff's primary mental health care provider reported her impressions of Plaintiff's work related limitations (*see* Tr. 388-89), presumably from her observations during Plaintiff's talk therapy sessions (Tr. 404-41).  The ALJ considered the work limitations assessed by Ms. Sievers and decided to give Ms. Sievers' overall opinion evidence little weight (Tr. 21).  The Court has determined substantial weight supports the ALJ's finding Ms. Sievers' opinion evidence was entitled to little weight (*see* discussion *supra*).

ALJ Davenport gave great weight to the findings of the reviewing psychologists (Tr. 21).  In so doing, the ALJ also stated she adopted these findings into the residual functional capacity assessment of what work related activities Plaintiff could still perform despite her severe mental impairments.  *Id.*  However, the Court's is unable to ascertain how the reviewing psychologists' findings are adopted into Plaintiff's RFC.

17

On March 9, 2009, Steven Wise, Psy.D., reviewed the records and agreed with Plaintiff's prior diagnoses of an affective disorder and anxiety, but found the impairments were not severe (Tr. 318). He found Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence or pace, but no difficulties in maintaining social functioning or episodes of decompensation (Tr. 328). He further noted "no mental deficits on face-to-face interview" and no memory loss, concentration deficits or confusion (Tr. 330).

On July 20, 2009, Leif Davis, Psy.D., also reviewed Plaintiff's records (Tr. 370-87). He found Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence or pace, mild difficulties in social functioning and no episodes of decompensation (Tr. 380). In the narrative section of his report, Dr. Davis reported his review of the record revealed Plaintiff took care of two children, including getting them ready for school, taking them to school and picking them up daily, cooked simple meals, did light household chores, drove a car, and was able to pay bills and manage finances (Tr. 382). He noted she also socialized with her family and was able to follow written and spoken instructions without significant difficulties. *Id.* Dr. Davis noted that while there is credible evidence to support the allegations of anxiety and depression, the mental symptoms did not appear significant enough for Plaintiff to seek out formal mental health treatment (Tr. 382).

Dr. Davis filled out a Mental RFC Assessment on July 20, 2009 (Tr. 384-87). He determined Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods and the ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms, and to perform at a

18

consistent pace without an unreasonable number and length of rest periods. *Id.* Plaintiff was not determined to be significantly limited in any other specific area of functioning. *See id.* Specifically, Dr. Davis stated in his narrative that Plaintiff was able to remember, understand and carry out simple instructions, able to adapt to infrequent changes in the work setting and able to do routine tasks within physical limits (Tr. 386).

ALJ Davenport posed two hypothetical questions to the VE. The limitations stated in the first hypothetical obviously did not form the basis for the ALJ's decision in this case as the VE testified a person with those limitations could not be competitively employed (Tr. 62-63). In the second hypothetical question, the VE was asked to presume the individual had the physical ability to "do up to medium work" (Tr. 63). The additional restrictions were that the "job should involve things instead of people, and there should be only occasional contact with people, coworkers and supervisors." *Id.* With these limitations, the vocational expert found an individual could perform jobs such as an assembler, a mail sorter and a warehouse checker. *Id.*

According to the Eleventh Circuit, in order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which encompasses all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam). "Though the Psychiatric Review Technique ("PRT") and RFC evaluations are undeniably distinct, *see* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) *citing Ramirez v. Barnhart*, 372 F.3d 546, 555 (3rd Cir. 2004) ("While SSR 96-8p does state that the PRTF findings are 'not an RFC assessment' and that step four requires a 'more detailed

19

assessment,' it does not follow that the findings on the PRTF play no role in steps four and five, and SSR 96-8p contains no such prohibition.").

The Eleventh Circuit requires an ALJ to include in a hypothetical any recognized limitation on a plaintiff's ability to maintain concentration, persistence or pace. *Richter v. Comm'r of Soc. Sec.*, 379 Fed. Appx. 959, 961-62 (11th Cir. 2010). Simply restricting a VE's inquiry into unskilled jobs and referring to a plaintiff's moderate limitation in ability to remember, understand and carry out detailed instructions is typically inadequate. *Id.* at 961.

However, when medical evidence demonstrates that the plaintiff retains the ability to perform the tasks despite deficiencies, an ALJ's hypothetical restricting the plaintiff to simple and routine tasks adequately accounts for such limitations. *Winschel*, 631 F.3d at 1180-81 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitation in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citing *Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Additionally, *Winschel* recognized holdings from other circuits that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *Winschel*, 631 F.3d at 1180 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace)); *Thomas v. Barnhart*, 278

F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

In this case, the operative hypothetical question asked of the vocational expert was identical to the stated RFC. The undersigned is unclear how the restrictions to working with things rather than people and to limited contact with others necessarily accounts for Plaintiff's moderate limitations in activities of daily living and moderate limitations in concentration, persistence or pace. The RFC and hypothetical question say nothing about whether Plaintiff, or the hypothetical individual, can perform skilled, semi-skilled or unskilled work. The RFC and hypothetical say nothing about the individual's ability to understand and carry out simple or complex instructions, to concentrate or focus for long or short periods of time, to actually perform simple or complex tasks, or to keep an expected pace in completion of tasks such as found with assembly line production or in a mail room or warehouse setting.

In a recent Eleventh Circuit case, a consultive examiner concluded that "despite a moderate degree of limitation in maintaining concentration, persistence, and pace, the plaintiff was 'able to follow simple instructions, complete simple tasks, make decisions, avoid hazards, and relate adequately to function in the workplace.'" *Jarrett v. Comm'r of Soc. Sec.*, No. 10-13911, 2011 WL 1378108, at *2 (11th Cir. Apr. 11, 2011). The Eleventh Circuit found that this supporting medical evidence substantiated the ALJ's hypothetical restricting the plaintiff to simple and routine tasks. *Id.* at 3. In Wilson's case, there is no consultative examiner who has concluded Wilson can perform any particular level of work.

21

In fact, a psychiatric or psychological consultative examination apparently was not obtained by the Social Security Administration. The ALJ pointed out a "substantial amount of medical evidence focused on [Wilson's] family issues" (Tr. 20), yet did not address to what degree she relied on this evidence in determining Wilson's remaining ability to perform work related tasks. *See Winschel*, 631 F.3d at 1180-81 (finding a hypothetical question restricting an individual to only unskilled work may adequately account for moderate limitations in concentration, persistence and pace *if* the ALJ indicates the medical evidence suggest the ability to work is unaffected by the limitation) (emphasis added); *see also Forrester v. Comm'r of Soc. Sec.*, No. 11-10736, 2012 WL 45446, *3-4 (11th Cir. Jan. 10, 2012) (affirming the ALJ's decision to deny disability benefits when the ALJ indicated the medical evidence suggested Forrester's ability to work was unaffected by her moderate limitations in concentration, persistence or pace and the ALJ limited the hypothetical question to simple, routine and unskilled work); *Kinnard v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 835, 837 (11th Cir. 2011) (affirming the ALJ's decision denying the plaintiff's disability application when the ALJ credited specific findings of the consultative psychologist that supported the hypothetical to the VE in which the individual "was mildly limited in his ability to understand, remember, and execute complex instructions; mildly to moderately limited in his ability to make judgments on complex work related decisions; mildly limited in his ability to interact appropriately with the public, supervisors, and coworkers; and mildly limited in his ability to respond appropriate[ly] to changes in a routine work setting").

In this case, as in *Winschel*, the ALJ did not indicate whether medical evidence supported finding Plaintiff could perform basic work activities in spite of the moderate limitation in two areas of functioning, nor did the ALJ implicitly account for the limitations

in his hypothetical to the vocational expert by instructing the VE to fully credit any particular findings or medical evidence related to Plaintiff's severe mental impairments.   *See Winschel*, 631 F.3d at 1181.   Thus,  ALJ Davenport failed to make findings sufficient for the Court to ascertain whether the limitations of working with things instead of people and having only occasional contact with other persons, as stated in the RFC and the hypothetical questions, adequately encompassed Plaintiff's severe mental impairments. Therefore, the Court does not find the ALJ's decision is fully supported by substantial evidence and remand is necessary to correct this flaw.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).   The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.   On remand, the Commissioner is instructed to:(1) reassess Plaintiff's residual functional capacity in light of this Order and Opinion; (2) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and, (3) conduct any other proceedings deemed appropriate.

Plaintiff is cautioned, however, that this opinion does not suggest she is entitled to disability benefits.   Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Wilson is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).[4]

---

[4]If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the Plaintiff/claimant to award disability benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2012.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
        and *pro se* parties, if any

---

1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.